# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs June 3, 2014

## STATE OF TENNESSEE v. ANTHONY ANTONIO COLE

**Appeal from the Circuit Court for Madison County**
**No. 13-87   Donald H. Allen, Judge**

---

**No. W2013-02161-CCA-R3-CD - Filed July 28, 2014**

---

Anthony Antonio Cole ("the Defendant") was convicted by a jury of driving under the influence, driving without a license, violation of the financial responsibility law, violation of the registration law, and failure to yield the right of way. Following a sentencing hearing, the trial court ordered the Defendant to serve a total effective sentence of twelve months and twenty-nine days in confinement. In this direct appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions for driving under the influence, driving without a license, and failure to yield the right of way. Upon our thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, SP. J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Anthony Antonio Cole.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; James G. Woodall, District Attorney General; and Chris Post, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Madison County Grand Jury indicted the Defendant on one count each of driving under the influence, driving without a license, violation of the financial responsibility law, violation of the registration law, and failure to yield the right of way. A jury trial was held, and the following evidence was adduced:

Chris Lawson, a trooper with the Tennessee Highway Patrol, testified that he was driving his patrol car when an oncoming blue Chevrolet Prizm made a sharp left turn in front of him and pulled into the parking lot of a gas station. Trooper Lawson testified that he "had to slam on [the] brakes to avoid a collision" when the blue Chevrolet turned abruptly in front of his patrol car. Trooper Lawson turned around and went back to the gas station parking lot. As he pulled into the parking lot, Trooper Lawson saw "a black male in dark shorts with a white t-shirt" exit the driver's side of the blue Chevrolet and enter the gas station store. Trooper Lawson parked his patrol car behind the blue Chevrolet and entered the store. Upon entering the store, Trooper Lawson "asked for the driver of the blue car to come out and speak with [him]." The Defendant stepped forward and identified himself as the driver of the vehicle. When he exited the store, the Defendant was wearing the same "dark shorts with a white t-shirt" that Trooper Lawson had seen him wearing as he exited the driver's side of the blue Chevrolet and entered the store.

Trooper Lawson testified, "[The Defendant] stated that he saw my vehicle coming, but he didn't realize I was as close as I was to him and . . . he perceived me as going slower than what I was." While speaking with the Defendant, Trooper Lawson "could smell a strong odor of alcoholic beverage." He noted that the Defendant "appear[ed] to be slightly impaired" and that the Defendant "had slurred speech, watery red bloodshot eyes, and was somewhat carefree kind of laughing a little bit like it wasn't a big deal." Trooper Lawson asked the Defendant for his driver's license, and the Defendant stated that he did not have one. Trooper Lawson identified a copy of the Defendant's driving history which confirmed that the Defendant was unlicensed at the time of the incident in question. Trooper Lawson also asked the Defendant for a copy of his vehicle registration and proof of insurance, and the Defendant stated that he could not provide either.

Trooper Lawson testified that, when he asked the Defendant whether he had consumed any alcohol or drugs earlier that evening, the Defendant responded that "he had drank one Corona and had also smoked a joint and that he was presently high from the joint of marijuana." In response to those comments, Trooper Lawson asked the Defendant to perform a field sobriety test, which the Defendant failed. As a result of the Defendant's behavior and his performance on the field sobriety test, Trooper Lawson concluded that the Defendant was intoxicated and placed him under arrest. Trooper Lawson read an implied consent form to the Defendant twice and explained to him the consequences of declining to sign the form. The Defendant refused to sign the form.

On cross-examination, Trooper Lawson testified that, at the time the Defendant turned in front of him, he could not see how many people were inside the car. Trooper Lawson's patrol car was equipped with video recording equipment, but that equipment was "disabled or broken" at the time of his encounter with the Defendant. Trooper Lawson estimated that approximately six or seven people were inside the store when he opened the door and "asked

for whoever the driver was to please come out and see [him]." The Defendant admitted to Trooper Lawson that he was the person who had been driving the blue Chevrolet. Trooper Lawson testified that, during the time he was speaking with the Defendant, several people who appeared to know the Defendant exited the store and began to"congregate" in the parking lot. None of those people claimed to be the driver of the blue Chevrolet. The Defendant was the only person that Trooper Lawson saw exit the blue Chevrolet, and he testified that it was "[v]ery unlikely" that anyone else had exited the vehicle.

At the conclusion of Trooper Lawson's testimony, the State rested its case-in-chief. The defense moved for a judgment of acquittal, which the trial court denied.

The Defendant chose to testify on his own behalf. According to the Defendant, before he arrived at the gas station, he had been at a friend's house, where he consumed one beer and smoked one joint of marijuana. The Defendant testified that the blue Chevrolet belonged to his mother. According to the Defendant, his cousin Travis Cole had been the person driving the blue Chevrolet on the day of the incident in question. When they arrived at the gas station, both he and Travis[1] exited the car and entered the store. He testified:

> [Trooper Lawson] came to the door and he was like whoever was driving this car if they don't come out in a certain amount of time that he was going to tow the car. That's when I came out and asked him what was going on because it was my momma's car and I wanted to see what was going on.

The Defendant admitted to telling Trooper Lawson that he had consumed a beer and smoked some marijuana earlier in the day. According to the Defendant's testimony, after Trooper Lawson already had arrested the Defendant, Travis exited the store and attempted to tell Trooper Lawson that he actually had been the one driving. However, Trooper Lawson "fanned Travis off like he ain't nobody to talk to right now." The Defendant confirmed that he declined to sign the implied consent form.

On cross-examination, the Defendant admitted that he was still under the influence of the marijuana at the time he was talking to Trooper Lawson. According to the Defendant, he never identified himself to Trooper Lawson as the driver of the blue Chevrolet. The Defendant claimed that he tried to tell Trooper Lawson that he was not the driver but that Trooper Lawson ignored him.

Following the Defendant's testimony, the defense rested its case. The jury deliberated and found the Defendant guilty of driving under the influence, driving without a license,

---

[1] Because Travis Cole and the Defendant have the same surname, we will refer to Travis by his first name in order to avoid any confusion. We intend no disrespect.

violation of the financial responsibility law, violation of the registration law, and failure to yield to the right of way. A sentencing hearing was held, and the trial court ordered the Defendant to serve a total effective sentence of twelve months and twenty-nine days in confinement. The Defendant filed a motion for new trial, which the trial court denied. The Defendant filed a timely notice of appeal.

## Analysis

The Defendant alleges that the evidence was not sufficient to support his convictions for driving under the influence, driving without a license, and failure to yield the right of way because "the State failed to prove beyond a reasonable doubt the identity of the driver of the vehicle." Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The Defendant challenges his convictions of driving under the influence, see Tenn. Code Ann. § 55-10-401 (2012), driving without a license, see id. § 55-50-301 (2012), and failure to yield the right of way, see id. § 55-8-130 (2012). The sole issue raised by the Defendant on appeal with respect to those convictions is the sufficiency of the evidence regarding his identity as the driver of the blue Chevrolet. Trooper Lawson testified that he saw the Defendant exit the blue Chevrolet and enter the store. When Trooper Lawson asked for the driver of the "blue car" to exit the store and speak with him, the Defendant responded and identified himself as the driver. Trooper Lawson specifically noted that, when the

-4-

Defendant exited the store to speak with him, he was wearing the same "dark shorts with a white t-shirt" as the individual he saw exit the driver's side of the blue Chevrolet. Furthermore, Trooper Lawson testified that the Defendant offered an explanation as to why he had made the abrupt turn.

To the extent that the Defendant's testimony conflicted with that of Trooper Lawson, we note that we must resolve all conflicts in the testimony in favor of the State. See Harris, 839 S.W.2d at 75. Furthermore, "[q]uestions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issued raised by the evidence are resolved by the trier of fact." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Trooper Lawson's testimony was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that the Defendant was the driver of the blue Chevrolet. Accordingly, the Defendant is entitled to no relief on this basis. We also have reviewed the evidence in light of the elements of each of the challenged offenses, see supra, and we conclude that the evidence was sufficient in all other aspects to support these convictions.

## CONCLUSION

For the reasons set forth above, we affirm the judgments of the trial court.

_____
JEFFREY S. BIVINS, SP. JUDGE